**Reversed and Remanded and Opinion filed May 8, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00441-CV

---

## RICHARD BOWMAN, Appellant

## V.

## EL PASO CGP COMPANY, L.L.C. Appellee

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2008-17220**

---

## O P I N I O N

El Paso CGP Company, L.L.C. (El Paso),[1] a judgment creditor, sued Richard Bowman for allegedly fraudulent transfers that El Paso's judgment debtor, Atasca Resources, Inc., made to Bowman. El Paso moved for a traditional

---

[1] Although the clerk's record contains only a petition with three other entities named as plaintiffs, and the record does not contain a petition with El Paso as a plaintiff, El Paso moved for summary judgment as "Plaintiff El Paso CGP Company, L.L.C., f/k/a the entities El Paso Field Services Management, Inc., El Paso Field Operations Company, and El Paso Transmission Company." The trial court's summary judgment awards relief to El Paso. We have restyled this case on appeal to reflect the correct appellee, El Paso.

summary judgment on its own claim, and the trial court awarded El Paso a judgment against Bowman for $987,915.82. Bowman appealed.

In this appeal, we must determine if there is genuine issue of material fact about whether Atasca received "reasonably equivalent value" from Bowman in exchange for Atasca's transfers to Bowman of $794,628.94. We hold there is a genuine issue of material fact because there is some evidence that the transfers to Bowman were loans or loan repayments[2] and that Bowman repaid Atasca more money than he took.

Accordingly, we reverse the trial court's judgment and remand for a new trial.

## I.  BACKGROUND

El Paso obtained a judgment against Atasca and then sued Bowman for allegedly fraudulent transfers that Atasca made to Bowman. The trial court signed a partial summary judgment order for El Paso, declaring as a matter of law that Atasca was insolvent from December 31, 2003, through June 30, 2012. Then El Paso moved for summary judgment on its claim against Bowman for fraudulent transfers. El Paso relied solely on Section 24.006(a) of the Texas Uniform Fraudulent Transfer Act (TUFTA):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at

---

[2] As outlined below, Bowman variously testified, without objection, that "the transfers" were loans from him and loans to him. Because we conclude that the analysis turns on the fact that Bowman ultimately gave Atasca more than Atasca gave Bowman, we need not analyze the distinction or the implications of whether the transfers were loans or loan repayments.

2

that time or the debtor became insolvent as a result of the transfer or obligation.

Tex. Bus. & Com. Code Ann. § 24.006(a).[3]

El Paso filed evidence with its motion, including some of Bowman's interrogatory responses and a document that Bowman produced during discovery, titled "RB Payments to and Disburments [sic] from ARI, Period 01/01/02–01/23/08." The document contains about ninety-five rows of entries under three columns titled "Date," "To ARI," and "From ARI." The "Date" entries begin with October 28, 2002, and end with January 23, 2008. The document indicates that the entries under the "To ARI" heading total $2,178.056.94, and the entries under the "From ARI" heading total $1,208,628.94. Bowman produced this document to El Paso in response to El Paso's interrogatory asking Bowman to "describe each and every payment or distribution, or transfer of any interest in any property or asset, from Atasca or any of its affiliates to you from January 1, 2001 through the present." Bowman answered the interrogatory, stating that "[t]ransfers to Atasca from Bowman were loans to Atasca, and transfers from Atasca to Bowman consisted of loan repayments, salary payments, expense reimbursement and/or distributions." Using this document produced by Bowman, El Paso added the thirty-one entries in the "From ARI" column during the period of Atasca's insolvency (as set by the earlier partial summary judgment order) and sought judgment based on the sum of $794,628.94.[4]

---

[3] El Paso initially relied on subsection (b), as well, but El Paso abandoned that theory in its summary judgment reply brief.

[4] El Paso's accountant made an adjustment to include interest on each transfer, bringing the total value of the transfers to $1,228,981.44, which exceeded El Paso's judgment against Atasca for $987,915.82.

3

El Paso also filed evidence showing that Bowman was the sole shareholder and president of Atasca, and Bowman admitted to using the money from Atasca to pay for his personal expenses. Bowman testified at his deposition that the transfers to and from Atasca were loans or repayment of loans, but none of these purported loans were documented with promissory notes, none were secured, and none had repayment schedules, interest rates, or other definite terms. Bowman testified, "It was just continuous dollars back and forth."

In his affidavit filed in response to El Paso's motion, Bowman testified, "The transfers complained about by El Paso were loans to me from Atasca." He testified further about the transfers between him and Atasca: "[A]ll loans to me were repaid to Atasca. . . . From 2004–2007, I paid more money to Atasca than I received. As of 2008, I had transferred over $1.8 million to Atasca. The net transfers between me and Atasca ended with a positive balance in favor of Atasca." Bowman also attached the affidavit of his and Atasca's accountant, Melina Pinner, who testified similarly that the transfers to Bowman were loans, all loans were repaid, and it was a common practice for Atasca and Bowman to transfer money to each other since the company's inception.

The trial court granted El Paso a final summary judgment against Bowman, awarding El Paso $987,915.82. Bowman appealed.

## II.    STANDARD OF REVIEW

We review de novo the trial court's decision to grant a summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). A movant for a traditional summary judgment, such as El Paso, must show that there is no genuine issue of material fact and that El Paso is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A plaintiff, such as El Paso,

4

satisfies this burden by conclusively proving all elements of its claim. *See Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)). Evidence is conclusive only if reasonable people could not differ in their conclusions. *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We consider the evidence in the light most favorable to Bowman, indulging reasonable inferences and resolving doubts in Bowman's favor. *Id.* We credit evidence favorable to Bowman if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848.

## III. ANALYSIS

In his first issue, Bowman contends the trial court erroneously granted summary judgment because a genuine issue of material fact exists as to whether the transfers to Bowman were made for reasonably equivalent value—in particular, Bowman transferred more money to Atasca than the company transferred to him.[5] El Paso responds that the payments from Atasca to Bowman (1) were not loans under Texas law; (2) did not include value to Atasca; and (3) did not include reasonably equivalent value to Atasca. El Paso contends that the payments from Bowman to Atasca are irrelevant for purposes of TUFTA Section 24.006(a).

We hold that El Paso failed to conclusively prove that Atasca did not receive reasonably equivalent value for the transfers at issue.

---

[5] Bowman's second issue concerns the validity of three individual transfers. Because we sustain his first issue, we do not address his second issue and El Paso's corresponding arguments. *See* Tex. R. App. P. 47.1.

5

## A. Whether there is Evidence that the Transfers to Bowman Were Loans

El Paso contends that the transfers to Bowman were not loans as a matter of law, citing a few cases concerning loan agreements that lack material terms. *See, e.g.*, *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms."). El Paso argues that because the transfers to Bowman were not legally enforceable loans as a matter of law, Atasca received nothing of value from Bowman in return for the transfers to Bowman.

In *T.O. Stanley Boot*, a business sued a bank for breach of contract because the bank did not provide the business with a line of credit. *See id.* at 221. In other words, the bank had not performed its alleged obligation to fund a loan to the business. The Texas Supreme Court held that the alleged contract failed for indefiniteness because the business introduced evidence of only one material term—the amount to be loaned. *Id.*

However, "the law favors finding an agreement sufficiently definite where one side has already performed its side of the bargain." *Vela v. Vela*, No. 14-12-00822-CV, 2013 WL 6700270, at *6 (Tex. App.—Houston [14th Dist.] Sept. 24, 2013, no pet.) (mem. op.). In *Vela*, this court held that the plaintiff was entitled to summary judgment on her claim for the breach of an oral loan agreement. *Id.* at *7. The plaintiff testified by affidavit that she gave the defendant $110,000, thus showing a material term—the amount to be loaned. *Id.* at *5. This court held that the loan agreement did not fail for indefiniteness although there was no direct evidence of an interest rate, maturity date, or repayment terms. *See id.* at *5–6. The interest rate was not a material term because the plaintiff did not seek recovery of interest on the loan. *Id.* at *6. For an oral loan agreement with no specified

6

repayment terms or date for repayment, this court concluded "payment is due on demand and demand may be made within a reasonable time." *Id.* at *5. Because there was evidence that the plaintiff demanded repayment at a reasonable time, the contract did not fail for indefiniteness. *See id.* at *6.

Here, Bowman and Pinner testified by affidavit that all the transfers El Paso relied upon were loans from Atasca to Bowman. El Paso's evidence shows the amount of each transfer, thus satisfying the material term of the amounts loaned. Bowman and Pinner testified that all loans were repaid, and El Paso's evidence shows transfers from Bowman to Atasca, thus satisfying the material term of the maturity dates and repayment terms. Because Atasca did not attempt to collect interest from Bowman, an interest rate is not a material term. *See id.*

El Paso did not conclusively establish that the transfers to Bowman were not loans as a matter of law.

## B. Whether Atasca Received No Value as a Matter of Law for the Transfers to Bowman

El Paso acknowledges, "For a loan, the value that is exchanged is the unperformed promise to repay the loan." However, El Paso contends that Bowman provided no value to Atasca as a matter of law because the definition of "value" in TUFTA Section 24.004(a) excludes Bowman's promises to repay Atasca. The TUFTA defines value as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Tex. Bus. & Com. Code Ann. § 24.004(a). El Paso contends "'value can only be in the form of an 'unperformed promise' if the promise is made 'in the ordinary

7

course of the promisor's business to furnish support to the debtor or another person.'" El Paso's interpretation of the statute would mean that any "unperformed promise" is not value as a matter of law unless that promise is made in the ordinary course of the promisor's business of furnishing support. El Paso cites no authority for this position, and it is incorrect.

There is only one type of "unperformed promise" that is not value as a matter of law: a promise to furnish support not made in the ordinary course of the promisor's business. *See In re Schaefer*, 331 B.R. 401, 419 (Bankr. N.D. Iowa 2005) ("An unperformed promise to provide support is the only consideration that does not constitute value as a matter of law. Whether another form of consideration constitutes value must be determined in light of the purpose of the statute, to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." (quotation and citations omitted)); *see also In re Carbaat*, 357 B.R. 553, 561 (Bankr. N.D. Cal. 2006) (Bankruptcy Code and California UFTA's "definition of value . . . excludes an unperformed promise to provide future support to the debtor or to another person"); *In re Mussa*, 215 B.R. 158, 171 (Bankr. N.D. Ill. 1997) ("[V]alue under the UFTA expressly excludes unperformed promises to furnish support to the debtor or another person.").[6]

---

[6] The TUFTA is a uniform law that should be construed in such a way to make the law uniform among the states enacting it. *See* Tex. Bus. & Com. Code Ann. § 24.012. Accordingly, we may consider authority from other states and the comments to the Uniform Fraudulent Transfer Act. *See Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013); *First. Nat'l Bank of Seminole v. Hooper*, 104 S.W.3d 83, 86 (Tex. 2003). Because the TUFTA's concept of "value" was adopted from the Bankruptcy Code, cases interpreting "reasonably equivalent value" under the Bankruptcy Code are persuasive. *See In re Houston Drywall, Inc.*, No. 05-95161-H4-7, 2008 WL 2754526, at *31 (Bankr. S.D. Tex. July 10, 2008) (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)); *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414, at *5 n.12 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (not designated for publication); *see also* Unif. Fraudulent Transfer Act § 3 cmts. 1–2 (definition of "value" as used in "reasonably equivalent value" is from the Bankruptcy Code).

Thus, an unperformed promise may provide value. *See In re Treasure Valley Opportunities, Inc.*, 166 B.R. 701, 705 (Bankr. D. Idaho 1994) (citing Unif. Fraudulent Transfer Act § 3 cmt. 4); *see also In re Gardner*, 218 B.R. 338, 346–47 (Bankr. E.D. Pa. 1998) ("[T]he general rule is that an unperformed promise may constitute value, and the amount of value to be ascribed to an unperformed promise in a particular case is a factual question." (quotation omitted)); *Estate of Hurst ex rel. Cherry v. Jones*, 750 S.E.2d 14, 22 (N.C. Ct. App. 2013) ("[A]n unperformed promise may be consideration except for an executory promise to support another person."). To the extent courts have held that "future considerations" do not give value, there is an important caveat: value does not include "future considerations, ***at least to the extent not actually performed***." *Gray v. Snyder*, 704 F.2d 709, 711 (4th Cir. 1983) (emphasis added); *accord In re Dixon*, 143 B.R. 671, 681 (Bankr. N.D. Tex. 1992).

Bowman adduced evidence that the various transfers to him were loans, and he actually performed his promises to repay the loans. He and Pinner testified that Bowman repaid all the money he took from Atasca. Because Bowman promised to repay the money and then actually repaid it, El Paso failed to conclusively prove that Bowman gave Atasca no value as a matter of law.

## C. Whether Atasca Received Reasonably Equivalent Value for the Transfers to Bowman

El Paso contends that (1) "Without documents memorializing a loan, however, a loan cannot constitute reasonably equivalent value"; and (2) "'Reasonably equivalent value,' however, is not satisfied when the relationship is 'the other way around,' and the shareholder is receiving the loan." For these propositions, El Paso cites *In re Erstmark Capital Corp.*, No. 98-30858-HCA-11, 2002 WL 1792213 (N.D. Tex. Aug. 2, 2002).

9

Contrary to El Paso's contentions, in *Erstmark* the bankruptcy court—a fact finder—relied on the lack of documentation as some evidence of the lack of reasonably equivalent value; the lack of documentation did not negate reasonably equivalent value as a matter of law. *See id.* at \*4. A credibility determination was important to the bankruptcy court's finding of a fraudulent transfer because "the financial relationship between [the defendants] and [the debtor] is murky." *See id.* Further, the "other way around" quote from the district court was a reference to testimony by the debtor's chief financial officer that despite defendants' claims that the debtor owed them money, the defendants in fact "owed [the debtor] money—not the other way around." *Id.* The Fifth Circuit held that the bankruptcy court did not clearly err by finding, as a factual matter, that the debtor did not receive reasonably equivalent value because although the defendants claimed they transferred more money to the debtor than they received, the debtor's chief financial officer testified that "the transfers from [the debtor] to [the defendants] exceeded any amounts they put into [the debtor]." *In re Erstmark Capital Corp.*, 73 Fed. App'x 79, at \*3 (5th Cir. 2003). There is evidence that the opposite was true here. *Erstmark* does not support El Paso's contentions.

We now address whether there is a genuine issue of material fact regarding the element of reasonably equivalent value. As part of El Paso's summary judgment burden on its claim under TUFTA Section 24.006(a), El Paso must conclusively prove that Atasca did not receive reasonably equivalent value in exchange for the transfers to Bowman. *See Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (plaintiff has burden to prove fraudulent transfer); *see also Cullins*, 171 S.W.3d at 530. Although a transaction may give a debtor reasonably equivalent value as a matter of law, "the question of reasonable equivalence is usually a question of fact, or is at least fact-

10

intensive." *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003); *see also In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010); *In re Ozark Rest. Equip. Co.*, 850 F.2d 342, 344 (8th Cir. 1988).

To determine whether value is reasonably equivalent, "[c]ourts examine all the circumstances surrounding a transaction, looking to whether there is a reasonable and fair proportion between what the debtor surrendered and what the debtor received in return." *In re Pace*, 456 B.R. 253, 270 (Bankr. W.D. Tex. 2011) (quotation omitted); *see also In re Pawlak*, 483 B.R. 169, 185 (Bankr. W.D. Wis. 2012) ("[T]he reasonableness of the value must be determined by the facts and circumstances of the particular case."); *In re IFS Fin. Corp.*, 417 B.R. 419, 442 (Bankr. S.D. Tex. 2009) ("Courts must consider all aspects of a transaction and both direct and indirect burdens to the debtor when determining value."). "'The proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors.'" *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000) (quoting *In re Viscount Air Servs.*, 232 B.R. 416, 434 (Bankr. D. Ariz. 1998)); *see also In re Pace*, 456 B.R. at 270 ("[T]he issue is whether from the creditor's standpoint, the estate lost value."); *In re IFS Fin. Corp.*, 417 B.R. at 442 ("The salient issue is whether the estate lost value."). "'Value' is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." Unif. Fraudulent Transfer Act § 3 cmt. 2; *accord In re Marlar*, 252 B.R. 743, 760 (B.A.P. 8th Cir. 2000).

"Value is determined as of the date of the transfer." *Mladenka*, 130 S.W.3d at 407 (citing *In re Hinsley*, 201 F.3d at 644). However, the "emphasis is not on whether value was received contemporaneously with the transfer, but on the net effect on the debtor's estate." *Miller v. First Bank*, 696 S.E.2d 824, 831 (N.C. App. 2010) (citing, *e.g.*, *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479,

11

485 (4th Cir. 1992)). "Courts will generally look past the form of a transaction to its substance. 'Thus an allegedly fraudulent conveyance must be evaluated in context; where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications.'" *Official Comm. Unsecured Creditors of Grand Eagle Cos. v. ASEA Brown Boverie, Inc.*, 313 B.R. 219, 229 (N.D. Ohio 2004) (quoting *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993)).

The determination of reasonably equivalent value requires focusing on the substance of what occurred between Bowman and Atasca: the owner of a closely held company transferred assets to and from his company, with no net loss to the company. In *In re Food & Fibre Protection, Ltd.*, the debtor was a corporation, and the defendant in the fraudulent transfer action, Jonovich, was the president, director, and sole shareholder of the debtor. 168 B.R. 408, 413 (Bankr. D. Ariz. 1994). In September and October 1990, Jonovich loaned the debtor $135,000, and then in February 1991, the debtor repaid Jonovich an amount in excess of $135,000,[7] and the bankruptcy trustee sought to avoid the transfer as fraudulent "because Jonovich took more from [the debtor] than he paid into it from the money borrowed." *Id.* at 419. The court found, as a factual matter, that the debtor received reasonably equivalent value for its payment to Jonovich because he testified "although he kept poor records, he did, in fact, over the eight years he had the company, put more into it than the difference the Trustee disputes." *Id.*

Like Jonovich, Bowman testified that he "paid more money to Atasca than [he] received." He testified that he repaid all of the money he took from Atasca,

_____

[7] Although the court did not identify the exact amount Jonovich took from the debtor, it was at least $165,000 because the debtor paid Jonovich an amount of money that Jonovich had owed another defendant, the principal balance of which was $165,000. *See* 168 B.R. at 414–15 & n.2. Jonovich used the difference between the two amounts, $30,000, "for unrelated personal purposes." *Id.* at 414.

and the "net transfers between [Bowman] and Atasca ended with a positive balance in favor of Atasca."  Indeed, El Paso's evidence shows that during the period of insolvency, while Atasca transferred up to $794,628.94 to Bowman, Bowman transferred up to $1,934.056.94 to Atasca.  Under these circumstances, a fact finder could find that Atasca received reasonably equivalent value.  *See id.*; *see also In re Stewart*, 21 B.R. 329, 331–32 (Bankr. E.D. Tenn. 1982) (when the debtor took over $47,000 from his father's estate in the form of a loan to his closely held company and then transferred about $26,000 to the estate for the benefit of the defendants, his sisters, the payments to his sisters were "non-fraudulent because a value in excess of 'reasonably equivalent value' was given in consideration of the payments (i.e. the loans from the proceeds of the decedent's estate to the debtor's corporation)"). [8]

---

[8] We note that El Paso complains about Bowman's inclusion of transfers to Atasca "during a time period chosen by Bowman at his whim."  That assessment is incorrect factually and legally.  Factually, El Paso chose the dates listed in the document describing transfers to and from Atasca and Bowman by requesting information from that time period in its interrogatory.  Further, the dates of insolvency were established by El Paso's partial motion for summary judgment.  Legally, El Paso's complaint about the time period would shift the burden to Bowman to prove an element of El Paso's claim.  Rather, it is El Paso's burden to prove that Atasca did not receive reasonably equivalent value.  *See In re Pace*, 456 B.R. at 270; *see also Mladenka*, 130 S.W.3d at 405.

Perhaps El Paso will disprove Bowman's self-serving testimony with additional financial records, or a fact finder may disbelieve him and find *actual* fraud.  *See Phillips v. B.R. Brick and Masonry, Inc.*, No. 01-09-00311-CV, 2010 WL 3564820, at *5–6 (Tex. App.—Houston [1st Dist.] Sept. 10, 2010) (mem. op.) (holding that although there was evidence the defendant transferred or caused to be transferred more money to the debtor than the debtor transferred to the defendant, there was legally sufficient evidence to support the jury's finding of *actual* fraud under Section 24.005(a)(1) and (b) because the badges of fraud showed the debtor's intent to hinder, delay, or defraud creditors).  But with the summary judgment evidence showing a net positive outcome for Atasca, we conclude there is a genuine issue of material fact to be resolved by a fact finder.

Even if it would be appropriate to ignore some of the post-transfer payments from Bowman to Atasca,[9] El Paso has not established that all of Bowman's transfers to Atasca are "irrelevant." This case does not involve simply one transfer to Bowman and then one transfer to Atasca, but rather an assortment of about thirty-one transfers to Bowman and forty-six transfers to Atasca over a period of insolvency stretching at least four years. There may have been risk to Atasca that Bowman would not repay the loans or continue to add money to the company. However, the "existence of risk is not determinative of value." *In re Pawlak*, 483 B.R. at 186. "Instead, it is simply a factor to be considered when weighing the relative worth of what the debtors acquired." *Id.* (finding reasonably equivalent value as a matter of law when the debtor transferred $50,000 for future contingent legal services because it was likely those services would be needed and worth at least $50,000). Here, a fact finder could conclude that the risk of non-repayment was low because there is evidence that Atasca and Bowman transferred money to and from each other since Atasca's inception, and Bowman had repaid all loans to Atasca. It is impossible to determine as a matter of law from this summary judgment record that Bowman's promises to repay Atasca were not reasonably equivalent in value to the transfers to him in light of the evidence that Bowman repeatedly fulfilled his promises and transferred more money to Atasca than he received.

Finally, El Paso contends we should be guided by TUFTA Section 24.004(d), which provides: "'Reasonably equivalent value' *includes without limitation*, a transfer or obligation that is within the range of values for which the

---

[9] *See In re Pawlak*, 483 B.R. 169, 185 (Bankr. W.D. Wis. 2012) ("As the trustee contends, the critical time to consider is when the transfer was made. Subsequent events should not affect whether reasonable value was given, and courts typically ignore post-transfer appreciation or depreciation in value.").

transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Com. Code Ann. § 24.004(d) (emphasis added). This statute identifies one non-exclusive method for proving reasonable equivalence. Because we hold that Bowman raised a genuine issue of material fact regarding whether Atasca received reasonably equivalent value, we need not address El Paso's contention that Bowman failed to satisfy TUFTA Section 24.004(d). *See* Tex. R. App. P. 47.1.

Bowman's first issue is sustained.

## CONCLUSION

There is a genuine issue of material fact about whether Atasca received reasonably equivalent value for its transfers to Bowman. Accordingly, the trial court's judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

/s/    Sharon McCally
       Justice

Panel consists of Justices McCally, Busby, and Donovan.

15