

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00271-CV

———————————————

DR. MYLISSA'S MEDICAL BOUTIQUE LLC AND MYLISSA GRABER,
Appellants

V.

BALBOA CAPITAL CORPORATION, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-356005-24

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellants Dr. Mylissa's Medical Boutique LLC (DMMB) and Mylissa Graber bring this restricted appeal from a no-answer default judgment entered in favor of Appellee Balboa Capital Corporation on its breach-of-contract and breach-of-guaranty claims. Appellants assert that the trial court erred by granting Balboa's motion for default judgment because (1) the contract at the heart of Balboa's claims is missing material terms, (2) the record lacks sufficient evidence of damages, and (3) the trial court lacked personal jurisdiction over Appellants.[1] Because we disagree with Appellants on all three of these points and because we conclude that there is no error on the face of the record, we affirm.

## I. BACKGROUND

In June 2021, DMMB and LeasePoint Funding Group, LLC executed an equipment finance agreement (EFA) whereby LeasePoint financed the purchase of certain medical equipment to be used in DMMB's business. Pursuant to the EFA's terms, LeasePoint paid DMMB's chosen vendor the purchase price for the

---

[1]In the "Issues Presented" section of their brief, Appellants question not only the trial court's personal jurisdiction but also its subject-matter jurisdiction. However, they failed to address the issue of subject-matter jurisdiction in the body of their brief or to cite any authorities suggesting that the trial court lacked subject-matter jurisdiction. *See* Tex. R. App. P. 38.1(i). In any event, because the record reflects that Balboa had standing, its claims were ripe for adjudication, and the amount in controversy was within the trial court's jurisdictional limits, we are satisfied that the trial court had subject-matter jurisdiction. *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.007; *OptumRx, Inc. v. Advant-Edge Pharmacy*, 713 S.W.3d 460, 470–71 (Tex. App.—Houston [14th Dist.] 2025, no pet.).

2

equipment. In exchange, DMMB agreed to pay LeasePoint (1) a $995.00 documentation fee, (2) three consecutive monthly payments in the amount of $99.00, and (3) sixty additional monthly payments in the amount of $4,806.82. DMMB granted LeasePoint a security interest in the equipment to secure its obligations under the EFA. In addition, Graber personally guaranteed "the payment and performance" of all of DMMB's obligations.

In August 2021, Balboa purchased and took assignment of all of LeasePoint's rights and interests under the EFA.

In August 2024, Balboa sued DMMB for breach of contract and Graber for breach of her personal guaranty. In its petition, Balboa alleged that DMMB had defaulted under the EFA by failing to make the monthly payment that was due on June 1, 2024, and that it had "failed and refused" to make any subsequent installment payments when due. Balboa further alleged that it had made "numerous demands" upon Appellants for the payment of the past-due installments to no avail.

Because DMMB is a Florida entity that maintains neither a regular place of business nor a registered agent in the State of Texas, Balboa served it with citation through the Texas Secretary of State, who certified that the citation and petition were forwarded by registered mail to DMMB at its last known address. *See* Tex. Bus. Orgs. Code Ann. §§ 5.251–.253. After successfully moving for an order authorizing substituted service on Graber, Balboa served her by having the citation and petition affixed to the front door of her principal residence.

After Appellants failed to file an answer by the applicable deadline, Balboa moved for a default judgment. The motion contained a number of exhibits, including, among other things, the returns of service and the declaration of James Grant, Balboa's Senior Vice President. In his declaration, Grant averred that the total balance due and owing under the EFA was $135,388.81, which matched the amount of damages alleged in Balboa's petition. Grant's declaration itself contained several exhibits, including an accounting statement breaking down the balance owed by DMMB.

In November 2024, the trial court signed a default judgment awarding Balboa $135,388.81 in damages, jointly and severally, against DMMB and Graber plus interest, attorney's fees, and court costs. This restricted appeal followed.

## II. SCOPE AND STANDARD OF REVIEW

To prevail in a restricted appeal, an appellant must establish that (1) it filed notice of the restricted appeal within six months after the judgment was signed, (2) it was a party to the underlying lawsuit, (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law, and (4) error is apparent on the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *see also Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020) (confirming that, unlike the first three restricted-appeal requirements, the error-on-the-face-of-the-record requirement is not jurisdictional).

4

For purposes of a restricted appeal, the face of the record consists of all the papers on file in the appeal, including the clerk's record and the reporter's record. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997).

By failing to answer, a defendant admits all factual allegations in the plaintiff's petition except unliquidated damages. *Morgan v. Compugraphic Co.*, 675 S.W.2d 729, 731 (Tex. 1984); *Argyle Mech. Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.). Because a non-answering defendant admits all factual allegations in the plaintiff's petition regarding liability, the defendant's liability in a no-answer default case is conclusively established as long as the facts alleged in the petition support a cause of action. *Morgan*, 675 S.W.2d at 731. Accordingly, an appellant is precluded from challenging the legal and factual sufficiency of the evidence supporting liability in a no-answer default judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Morgan*, 675 S.W.2d at 731.

However, when a no-answer default judgment is taken on an unliquidated claim, the defendant may challenge on appeal the legal and factual sufficiency of the evidence supporting the unliquidated damages award. *Heine*, 835 S.W.2d at 83; *Dawson v. Briggs*, 107 S.W.3d 739, 748 (Tex. App.—Fort Worth 2003, no pet.). This is because when damages are unliquidated, the judge entering the default judgment must hear evidence on the damages. Tex. R. Civ. P. 243; *Heine*, 835 S.W.2d at 83.

But when a no-answer default judgment awards liquidated damages proved by an instrument in writing, an appellant is precluded from attacking the sufficiency of

5

the evidence supporting the liquidated-damages award. *See* Tex. R. Civ. P. 241; *Heine*, 835 S.W.2d at 83; *Aavid Thermal Techs. of Tex. v. Irving Indep. Sch. Dist.*, 68 S.W.3d 707, 711–12 (Tex. App.—Dallas 2001, no pet.) (explaining that when damages are liquidated, in that they can be accurately determined by the trial court from the petition and the attached instruments in writing, an evidentiary hearing is not required prior to entry of a default judgment). The reason for this is that when a default judgment is entered on a liquidated claim, "the rules of . . . procedure contemplate that the plaintiff be awarded the damages without the necessity of a hearing or the presentation of evidence." *Taylor v. State*, 293 S.W.3d 913, 916 (Tex. App.—Austin 2009, no pet.).

## III. DISCUSSION

Here, it is undisputed that the first three restricted-appeal elements are satisfied; the only question is whether there is error on the face of the record.[2] *See Alexander*, 134 S.W.3d at 848. As noted, Appellants raise three primary arguments to support their contention that the record contains such facial error. We will address each of these arguments in turn below.

---

[2]The record reflects that although Appellants did not file their notice of restricted appeal within the six-month deadline set by Texas Rule of Appellate Procedure 26.1(c), they filed their notice of restricted appeal and a proper motion for extension within fifteen days after the six-month deadline. Accordingly, the timeliness requirement is satisfied. *See* Tex. R. App. P. 26.1(c), 26.3; *Reliq Health Techs., Inc. v. Resurgence Partners, LLC*, No. 02-23-00211-CV, 2023 WL 8467376, at *2 (Tex. App.—Fort Worth Dec. 7, 2023, no pet.) (mem. op.).

## A. THE EFA IS NOT MISSING MATERIAL TERMS

Appellants first argue that the trial court erred by granting Balboa a default judgment because the EFA is missing material terms and is thus unenforceable. We disagree.

"To be enforceable, a contract must address all of its essential and material terms with a reasonable degree of certainty and definiteness." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). "In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). But each contract must be considered separately, and what terms are material and essential to a particular contract must be determined on a case-by-case basis. *Fischer*, 479 S.W.3d at 237; *T.O. Stanley Boot Co.*, 847 S.W.2d at 221.

The terms of a contract are to be construed to avoid forfeiture—particularly when, as here, one of the parties has fully performed its contractual obligations.[3] *Fischer*, 479 S.W.3d at 239–40; *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 623 (Tex. App.—San Antonio 1996, writ denied). And, "when construing an

---

[3]The only obligation that LeasePoint—Balboa's predecessor-in-interest—had under the EFA was to pay DMMB's chosen vendor the purchase price for the equipment. In its petition, Balboa alleged that LeasePoint had fully performed, and there is nothing in the record or in Appellants' brief to suggest otherwise. *See* Tex. R. App. P. 38.1(g).

7

agreement to avoid forfeiture, we may imply terms that can reasonably be implied." *Fischer*, 479 S.W.3d at 239.

Appellants assert that the EFA is unenforceable because it did not "state the amount being loaned" or the interest rate. But, as noted, the EFA sets forth the amounts and total number of DMMB's monthly payments (as well as the amount of the one-time documentation fee). Thus, the EFA contains specific terms from which the total amount owed under the loan can be calculated. *Cf. Balboa Cap. Corp. v. New Image Dental Lab'y, Inc.*, No. 8:20-cv-00207, 2020 WL 8617493, at *4 (C.D. Cal. Dec. 18, 2020) (order) (holding that similar equipment financing agreement was enforceable under California law and that the agreement sufficiently specified the amount of the loan because it set forth the borrower's monthly loan obligation and the total amount of the payments).

Appellants are correct that the EFA does not explicitly set forth the rate of interest on the loan, but while the interest rate is generally a material loan term, this is not always the case. *See Bowman v. El Paso CGP Co.*, 431 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that interest rate was not material loan term because the creditor did not attempt to collect interest from the debtor); *Vela v. Vela*, No. 14-12-00822-CV, 2013 WL 6700270, at *6 (Tex. App.— Houston [14th Dist.] Sept. 24, 2013, no pet.) (mem. op.) (holding that although interest rate is generally a material term to a loan contract, it was not material in this particular case because the appellee did not "allege or seek to recover any set interest

8

on the principal loan balance"); *see also Fischer*, 479 S.W.3d at 237 (recognizing that a contract's material terms must be determined on a case-by-case basis). Because Balboa did not allege a specific interest rate or seek to recover a set amount of interest from Appellants, the loan's interest rate is not material. *See Bowman*, 431 S.W.3d at 785; *Vela*, 2013 WL 6700270, at *6. Further, even if the interest rate were a material term, the EFA provided sufficient information from which it could be calculated. The EFA included an attached invoice from DMMB's chosen vendor reflecting the total purchase price for the equipment.[4] Thus, the total interest to be paid over the life of the loan can be easily calculated by subtracting the purchase price from the

---

[4]Appellants claim that the purchase price reflected in the vendor's invoice "cannot be relied on" because Balboa's internal accounting data reflected a different "Original Eq[uipment] Cost." But unlike the invoice—which was from DMMB's chosen vendor and listed DMMB's contact information in both the "[b]ill to" and "[s]hip to" fields—the accounting spreadsheet appears to have been created solely for Balboa's own internal purposes, and it is unclear—and indeed unlikely—that DMMB ever would have seen this document until Balboa moved for default judgment. Further, the "Original Eq[uipment] Cost" listed in Balboa's accounting spreadsheet matches the "Present Value" of the loan at the time that it was acquired from LeasePoint, which strongly suggests that Balboa used this figure—not the equipment's actual purchase price—as the "Original Eq[uipment] Cost" for internal accounting purposes. Thus, notwithstanding Balboa's internal accounting data, the vendor's invoice constitutes reliable evidence of the equipment's purchase price, and the purchase price reflected thereon appears to be the only one that DMMB would have had in mind when deciding whether to enter into the EFA.

total amount owed under the loan contract. And with that information, the interest rate can likewise be calculated.[5]

In sum, because the EFA sufficiently specifies the parties' respective obligations thereunder, we reject Appellants' argument that the trial court's default judgment was erroneous because the EFA is unenforceable.[6] *See Vela*, 2013 WL 6700270, at *5 ("A contract is sufficiently definite if a court is able to determine the respective legal obligations of the parties." (citing *Abatement Inc. v. Williams*, 324 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2010, pet. denied))).

---

[5]*See, e.g.*, Miranda Crace, *How to Calculate Interest on a Loan: A Complete Guide*, https://www.rocketloans.com/learn/financial-smarts/how-to-calculate-interest-on-a-loan (last visited Oct. 30, 2025).

[6]Appellants cite two federal cases—which they acknowledge are not binding on this court—holding that contracts similar to the EFA were unenforceable for the limited purpose of showing that "Balboa had reason to know, before filing the underlying action, that the EFA lacked material . . . financial terms." *See generally Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536 (5th Cir. 2024); *Ameris Bank v. Vital Enerqi Acupuncture & Herbs, LLC*, No. 8:24-cv-02215, 2025 WL 882706 (C.D. Cal. Jan. 22, 2025) (order). However, both of these cases are distinguishable. In *Balboa*, the Fifth Circuit's conclusion that the contracts at issue lacked material terms under applicable California law was based on the fact that it was impossible for the borrowers to determine the total financing costs. *See Balboa Cap. Corp.*, 111 F.4th at 550–51. But, as discussed above, the total financing cost under the EFA can be easily calculated by subtracting the purchase price reflected on the equipment vendor's invoice from the sum of the total payments under the EFA. The district court's conclusion in *Ameris Bank* was similarly based on the fact that the interest rate could not be determined; thus, it is likewise distinguishable. *See Ameris Bank*, 2025 WL 882706, at *4. Further, the *Ameris Bank* court failed to address the Texas case law cited above holding that the interest rate is not always a material term in a loan contract, *see Bowman*, 431 S.W.3d at 785; *Vela*, 2013 WL 6700270, at *6, and that the terms of a contract should be construed to avoid a forfeiture, *see Fischer*, 479 S.W.3d at 239–40; *America's Favorite Chicken Co.*, 929 S.W.2d at 623.

10

**B. THE TRIAL COURT DID NOT LACK SUFFICIENT EVIDENCE OF DAMAGES**

Next, Appellants argue that the trial court erred by awarding Balboa a default judgment because it lacked sufficient evidence of damages. We disagree.

Balboa contends that because its damages were liquidated, Appellants are precluded from challenging the sufficiency of the evidence supporting the trial court's damages award. This point is well-taken. As noted, when a no-answer default judgment awards liquidated damages proved by an instrument in writing, an appellant is precluded from attacking the sufficiency of the evidence supporting the liquidated-damages award. *See Heine*, 835 S.W.2d at 83; *Aavid Thermal Techs. of Tex.*, 68 S.W.3d at 711–12. Here, Balboa's petition alleged that it was owed $135,388.81 in damages, and its motion for default judgment contained exhibits—including Grant's declaration, the EFA, and an accounting statement—proving the alleged damages amount. *See McCluskey v. State*, 64 S.W.3d 621, 624 n.3 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (recognizing that written instrument supporting liquidated damages under Rule 241 need not be attached to the petition itself); *see also Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 837 (Tex. App.—Dallas 2009, no pet.) (concluding that appellant was "entitled to default judgment on liquidated damages" because the "the petition, motion for default judgment, and attached documents" supported the damages award). Because Balboa's claim was liquidated and proved by an instrument in writing, Appellants are precluded from attacking the sufficiency of

11

the evidence supporting the trial court's damages award. *See Heine*, 835 S.W.2d at 83; *Aavid Thermal Techs. of Tex.*, 68 S.W.3d at 711–12.

But even if Appellants' evidentiary challenges to the trial court's damages award were not barred, we would overrule them on the merits. Appellants assert that Balboa "failed to provide any documentation that [it had] purchased the DMMB loan other than screenshots generally referencing DMMB," but that is simply incorrect. The executed Assignment of Agreements reflecting Balboa's purchase of the DMMB loan from LeasePoint and LeasePoint's assignment of its rights under the EFA to Balboa was attached as an exhibit to—and authenticated by—Grant's declaration. *See* Tex. R. Evid. 803(6)(D). And Grant's declaration recites that "LeasePoint assigned all of its rights, title, and interest in and to the [EFA] and the Guaranty to [Balboa] for good and valuable consideration."[7]

---

[7]Appellants also confusingly assert that the trial court "could not rely on only hearsay statements in support of a motion for default judgment" and that Balboa's evidence was lacking because it "failed to provide a declaration from LeasePoint." But it is unclear how a declaration from a LeasePoint representative would fare any better than Grant's declaration under the hearsay rule. In any event, a trial court is entitled to rely on hearsay evidence when deciding a motion for default judgment. *See Tex. Com. Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999); *see also* Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay."). To the extent that Appellants contend that the assignment agreement—or any financial records originally created by LeasePoint but relied upon by Balboa—could only be authenticated by a LeasePoint records custodian, they are mistaken. *See, e.g., Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

12

Appellants also point out that although "Grant's declaration states that numerous demands were made upon DMMB for payment, . . . there is not one notice or demand from Balboa attached to the Grant declaration" and argue that we "must disregard any such reference." But whether DMMB demanded payment from Appellants prior to filing suit has no bearing on the amount of its liquidated damages. Further, because Balboa alleged in its petition that it had "made numerous demands upon [Appellants] for the past due installments under the [EFA] and Guaranty," Appellants admitted that Balboa had made these payment demands by failing to answer. *See Morgan*, 675 S.W.2d at 731; *Glynn Corp. v. Precept Bus. Prods., Inc.*, No. 05-097-0777-CV, 1999 WL 403028, at *3 (Tex. App.—Dallas June 21, 1999, no pet.) (not designated for publication).

Appellants additionally assert that Grant's declaration is conclusory as to the amount of Balboa's damages. But a creditor "need not file detailed proof reflecting calculations" of the balance due under a loan contract. *Hudspeth v. Inv. Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.). Rather, an affidavit from the creditor's employee showing the balance due is generally sufficient. *See id.* (citing *Martin v. First Republic Bank Ft. Wor.*, 799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied)); *see also Tex. Com. Bank, Nat'l Ass'n*, 3 S.W.3d at 517 (recognizing that affidavit testimony of total amount due under written instrument is legally sufficient to support award of that amount in default judgment); *Cha v. Branch Banking & Tr. Co.*, No. 05-14-00926-CV, 2015 WL 5013700, at *3 (Tex. App.—Dallas

13

Aug. 25, 2015, pet. denied) (mem. op.) (explaining that "an uncontroverted affidavit, made on personal knowledge by a bank officer, that identifies the note and guaranty and recites the principal and interest due, is not conclusory" and sufficiently supports a judgment). Thus, Grant's declaration—which identified the EFA and Graber's guaranty, stated the outstanding loan balance, and included an accounting statement—sufficiently proved Balboa's damages. *See Hudspeth*, 985 S.W.2d at 479.

## C.  THE TRIAL COURT HAD PERSONAL JURISDICTION OVER APPELLANTS

Finally, Appellants—pointing (1) to language in the EFA purportedly requiring all breach-of-contract actions to be filed in Travis County and (2) to certain purported service defects—argue that the trial court lacked personal jurisdiction over them. Once again, we disagree.

### 1.  Forum- and Venue-Selection Clauses

Appellants' first personal-jurisdiction argument is rooted in the following provision of the EFA:

> This EFA shall be governed and construed under the laws of the State of Texas without reference to its principle of conflicts of laws and is deemed to have been made and performed in Travis County, TX. *You submit to the jurisdiction of TX and agree that the TX state courts and/or the United States District Court for Travis County, TX[,] shall have exclusive jurisdiction* over any action or proceeding to enforce this EFA or any action or proceeding arising out of this EFA. [Emphasis added.]

Based on this language, Appellants contend that they submitted solely to the jurisdiction of the Texas courts located in Travis County. Because Balboa filed suit in Tarrant County and did not plead any facts establishing the trial court's personal

14

jurisdiction over Appellants other than the existence of the EFA's forum-selection clause, Appellants assert that the trial court lacked personal jurisdiction over them.

But Appellants' argument confuses the concepts of forum and venue. As one of our sister courts has succinctly explained:

> "[F]orum" and "venue" are not interchangeable terms. Forum generally refers to a sovereign or a state, and venue refers to the county in which suit is proper within the forum state. Thus, a forum-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a venue-selection agreement chooses a particular county or court within that state or sovereign.

*Tex. Mun. League Intergovernmental Risk Pool v. City of Hidalgo*, No. 13-22-00250-CV, 2022 WL 3651986, at \*6 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, pet. denied) (mem. op.) (citation modified).

Thus, the above-quoted provision in the EFA selected both a litigation forum (Texas) and a venue within that forum (Travis County).[8] *See In re OSG Ship Mgmt., Inc.*, 514 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) ("[N]ot all agreements can be neatly labeled as selecting either a forum or a venue.

---

[8]Although the EFA spoke in terms of "exclusive jurisdiction" within Travis County, jurisdiction pertains to a given forum—e.g., the State of Texas—not to a particular geographic location within the forum. *See Tex. Mun. League Intergovernmental Risk Pool*, 2022 WL 3651986, at \*5–6; *see also OSG Ship Mgmt., Inc.*, 514 S.W.3d at 337 ("Forum refers to the jurisdiction, generally a nation or state, where suit may be brought."). Thus, despite this jurisdictional language, the EFA's selection of Travis County as the location where enforcement actions were to be filed constitutes a venue-selection clause, not a forum-selection clause. *See Tex. Mun. League Intergovernmental Risk Pool*, 2022 WL 3651986, at \*6 (rejecting appellant's argument that contractual clause requiring suit to be brought in Travis County was an "'intrastate' forum[-]selection clause" as opposed to a venue-selection clause).

Some agreements select both."). But while forum-selection clauses are generally enforceable and are presumptively valid, *see Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020), venue-selection clauses are typically unenforceable in Texas unless the contract evinces a "major transaction" as defined by the venue statute, *see In re Tex. Ass'n of Sch. Bds.*, 169 S.W.3d 653, 660 (Tex. 2005) (orig. proceeding) (holding that venue-selection clause in contract that did not involve a major transaction was unenforceable); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 15.020 (providing that venue may be specified by written agreement in a "major transaction" in which "a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million"). Because the EFA did not evince a major transaction, its venue-selection clause is unenforceable. *See Tex. Ass'n of Sch. Bds.*, 169 S.W.3d at 660. And even if the venue-selection clause were enforceable, it would not deprive the trial court of the power to hear the case. *See* 77 Am. Jur. 2d *Venue* § 2 (2025) ("Venue is a procedural matter, and it refers not to the power to hear a case but to the geographic location where a given case should be heard."); *see also Xia v. Floyd*, 638 S.W.3d 821, 825 (Tex. App.—Fort Worth 2021, no pet.) (explaining that while a forum-selection clause is enforced through a motion to dismiss, a venue-selection clause must be "enforced through a timely motion to transfer venue or the issue is waived").

Because the EFA clearly selected Texas as the litigation forum for all disputes arising out of the contract and because the EFA's selection of Travis County as the

16

exclusive venue for any such disputes is both unenforceable and unrelated to the trial court's jurisdiction, we reject Appellants' argument that Balboa's failure to plead any additional facts establishing personal jurisdiction other than the existence of the forum-selection clause deprived the trial court of the power to hear the case.

## 2. Purported Service Defects

Appellants also assert that the trial court lacked personal jurisdiction over them because service was defective. But the record does not show that Balboa failed to comply with the rules for service of process.

As noted, because DMMB is a Florida entity that maintains neither a regular place of business nor a registered agent in the State of Texas, Balboa served it with citation through the Texas Secretary of State. *See* Tex. Bus. Orgs. Code Ann. §§ 5.251–.253; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.044. Appellants argue that Balboa failed to comply with the applicable service requirements because it did not plead that it had "search[ed] for DMMB's service agent in Florida [or had] attempted to provide an agent to the Texas Secretary of State to identify in the certified mailing." But the Texas Business Organizations Code imposes no such requirement.

Rather, under the applicable statutory provisions, service on a foreign entity that "fails to appoint or does not maintain" a registered agent in Texas[9] is effectuated

---

[9]Appellants do not dispute the fact that DMMB is a foreign entity that has no registered agent in Texas.

17

by "delivering to the secretary duplicate copies of the process" together with "any fee required by law." Tex. Bus. Orgs. Code Ann. §§ 5.251, .252(a). After service is effectuated, the Secretary of State must "immediately send" a copy of the process to the named entity at its "most recent address on file with the secretary of state" via certified mail, return receipt requested. *Id.* § 5.253.

The record reflects that Balboa complied with these requirements by delivering copies of the necessary service papers to the Secretary of State along with the applicable fee and that the Secretary of State sent the service papers to DMMB's last known address via certified mail, return receipt requested. Thus, the record shows that DMMB was properly served. *See id.* §§ 5.251–.253. Because DMMB's registered agent in Florida plays no role in the service process under the applicable statutes, Balboa was not required to search for DMMB's Florida registered agent or to provide any information in this regard to the Secretary of State. *See id.* Accordingly, we reject Appellants' argument that Balboa's failure to allege in its petition that it had searched for DMMB's Florida registered agent rendered service on DMMB defective.

Appellants also claim that service on Graber was defective because her name was misspelled as "Melissa Graber" on the return. But while "it is true that a default judgment cannot withstand attack unless the record affirmatively shows strict compliance with rules for service of process, strict compliance does not require obeisance to the minutest detail." *Then West, Inc./Bait House, Inc. v. Sorrells*, No. 05-01-01874-CV, 2002 WL 1397477, at *2 (Tex. App.—Dallas June 28, 2002, no pet.) (citing

18

*Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 612–13 (Tex. App.—Corpus Christi 1996, writ denied)). Thus, "[s]pelling errors too minor to raise any doubt that the correct person was served are insufficient to invalidate service." *Id.* Misspelling Graber's first name by one letter is a very minor error that raises no doubt that the correct person was served. *Cf. id.* (holding that "[t]he fact that Stephen F. Shaw's name was misspelled as 'Sthepen F Shaw' on the return" was an "extremely minor" error that did not invalidate service). Accordingly, we reject Appellants' argument that the misspelling of Graber's name on the return renders service on her defective.

## IV. CONCLUSION

Having rejected all of Appellants' arguments and having concluded that there is no error on the face of the record, we affirm the trial court's default judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: November 6, 2025