James D. HUDSPETH, Appellant,

v.

INVESTOR COLLECTION SERVICES LIMITED PARTNERSHIP, Appellee.

No. 04–97–00836–CV.

Court of Appeals of Texas, San Antonio.

Sept. 9, 1998.

Rehearing Overruled Oct. 9, 1998.

Royal D. Adams, Law Offices of Royal D. Adams, P.C., San Antonio, for appellant.

F. Richard Leach, Leach & Minnick, P.C., Houston, for appellee.

Before RICKHOFF, DUNCAN and ANGELINI, JJ.

## OPINION

RICKHOFF, Justice.

This suit on a note examines the federal holder in due course doctrine.

James Hudspeth and his wife Georgiana made a note to San Antonio Savings on December 5, 1988; they were divorced on January 19, 1990. Meanwhile, the savings institution which made the note was taken over by the Resolution Trust Corp. ("RTC") on March 3, 1989.

On October 26, 1993, James and Georgiana struck a settlement agreement on the note. James gave Georgiana the property which secured the note; in return, Georgiana agreed to be liable for repayment of the note. On December 5, 1993, the note matured and Georgiana did not pay it off. On April 26, 1994, Georgiana settled with the RTC, leaving a $190,000 deficiency; it is this amount which is the subject of this case. The RTC in turn sold the note to Investor Collection Services Limited Partnership ("ICS"), a partnership between the RTC and Investor Collection Services.

On September 19, 1996, ICS filed suit against James Hudspeth, who in turn filed a third party claim against Georgiana. On February 25, 1997, Georgiana was dismissed from the suit on grounds that James' claim for indemnity was premature. ICS moved for summary judgment on grounds that no issues of material fact remained in the case. Hudspeth defended on grounds that much of ICS's evidence was hearsay and that ICS was not a holder in due course, and asserted the personal defenses of accord and satisfaction and release. Summary judgment was finally granted on July 10, 1997.

In five issues Hudspeth argues that the trial court erred in granting summary judgment because ICS is not a holder in due course of the note; that Hudspeth can therefore assert his personal defenses against ICS; that Hudspeth has raised genuine issues of material fact as to whether ICS can enforce the deficiency against him; that the amount of the judgment is not supported by competent evidence; and that the trial court's award of interest was erroneous.

### STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judg-

ment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549.

■ In order to recover for the deficiency on the note, ICS had to establish (1) the notes in question, (2) that Hudspeth signed the notes, (3) that ICS was the legal owner and holder of the notes, and (4) that a certain balance was due and owing under the notes. *Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 111 (Tex.App.Dallas 1991, no writ); *Clark v. Dedina,* 658 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

In this case, the first three conditions are not at issue. We now consider whether ICS properly established the amount due and owing under the note.

### EVIDENCE OF AMOUNT DUE AND OWING

■ In his fourth issue, Hudspeth contends that the evidence offered by ICS to establish the balance due and owing under the notes is inadmissible hearsay and therefore incompetent to support summary judgment.

A sworn copy of the original note is in evidence. The evidence on which ICS relies to establish the amount of the deficiency is an affidavit of Dan Kleminich, asset manager for ICS–LP, stating the amount due and owing under the note. Both Kleminich's affidavit and the law firm collection letter, which Kleminich identifies as a business record, fixes Hudspeth' liability for the deficiency at $190,269.69. Hudspeth does not dispute this amount.

■ A lender need not file detailed proof reflecting the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment. *Martin v. First Republic Bank Fort Worth,* 799 S.W.2d 482, 485 (Tex.App.—Fort Worth 1990, writ denied). Courts have upheld summary judgments based on affidavits that simply identified a promissory note and a lump sum figure

as the principal balance and interest due and owing by the nonmovant on that note. *Thompson v. Chrysler First Bus. Credit Corp.,* 840 S.W.2d 25, 28–29 (Tex.App.—Dallas 1992, no writ); *General Specialties, Inc. v. Charter Nat' l Bank–Houston,* 687 S.W.2d 772, 774 (Tex.App.—Houston [14th Dist.] 1985, no writ). *See generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 9.06[2][e] (2d ed. 1996).

We therefore find the evidence competent to support summary judgment on the note in question. Hudspeth's fourth issue is overruled.

### HOLDER IN DUE COURSE

■ In his first issue Hudspeth argues ICS cannot be a holder in due course because the note in question was past its due date when ICS acquired the note. Hudspeth's second and third issues together contend that ICS did not prove that it was entitled to holder in due course status as a matter of law. ICS argues that because it acquired the note in question from the RTC, it has acquired the status of federal holder in due course. We agree with ICS.

A holder in due course is a holder of a negotiable instrument who took it, for value and in good faith, without notice that it is overdue or has been dishonored, or of any irregularities in the instrument or claim or defense on the part of any person. TEX. BUS. & COMM.CODE ANN. § 3.302(a) (Tex.UCC)(Vernon 1994 & Supp.1998). A holder in due course takes the instrument free of all "personal" defenses that do not arise from his conduct, and subject to a limited number of "real" defenses. *See generally* JAMES J. WHITE AND ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 14–10 (4th ed. 1995).

■ The federal holder in due course doctrine is a by-product of the *D'Oench, Duhme* doctrine, which protects federal deposit insurance institutions acting in their official capacities from claims or defenses based on unrecorded side agreements. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct.

676, 86 L.Ed. 956 (1942).[1] The doctrine of federal holder in due course arose because the *D'Oench, Duhme* doctrine was limited to "agreements" and does not reach alleged tortious misrepresentation claims by borrowers against the original lending institution. Nor could the FDIC qualify as a UCC holder in due course, because the FDIC almost never acquires the assets of failing institutions "in the regular course of business." *See* TEX. BUS. & COMM.CODE ANN. § 3.302 (Tex.UCC) (Vernon 1994). By creating a special holder in due course status for financial insurance institutions, courts allowed the FDIC to preclude the borrowers' claims of tortious misrepresentation—the same result as if the *D'Oench, Duhme* doctrine itself applied. *See* Fred Galves, *Might Does Not Make Right: The Call for Reform of the Federal Government' s* D'Oench, Duhme *and 12 U.S.C. 1823(e) Superpowers in Failed Bank Litigation,* 80 MINN. L.REV. 1323, 1350 (1996).

■ Courts have extended this "federal holder in due course" status to the FDIC, FSLIC, RTC and their assigns, reasoning that the doctrine protects depositors of failed banks and promotes the congressionally mandated purpose of the deposit guarantee institutions. This federal holder in due course status extends whether or not they satisfy the technical requirements of state law, such as taking a note with knowledge that it is overdue or in default. *Federal Savings and Loan Ins. Corp. v. Cribbs,* 918 F.2d 557, 559 (5th Cir.1990); *Campbell Leasing v. FDIC,* 901 F.2d 1244, 1249 (5th Cir. 1990); *Vaughn v. DAP Financial Svcs.,* 982 S.W.2d 1, 5–6 (Tex.App.—Houston [1st Dist.] 1997, n.w.h.); *RTC v. Ammons,* 836 S.W.2d 705, 710 (Tex.App.—Houston [1st Dist.] 1992, no writ). *See also FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993) (reaffirming that the common law rule of assignments means private-party purchasers of instruments from the FDIC acquire federal holder in due course status); *FDIC v. Wood,* 758 F.2d 156, 161–162 (6th Cir.1985)(discussing public policy underlying transfer of federal holder in due course status to subsequent purchasers).

We therefore find that ICS properly acquired federal holder in due course status

from the RTC and that Hudspeth' personal defenses are barred as a matter of law. We overrule Hudspeth's first, second and third issues.

### INTEREST CALCULATION

■ In his fifth issue Hudspeth complains the trial court erred in its calculation of interest due. This was included in ICS's Motion for Summary Judgment; however, Hudspeth did not object to it in his response to the motion for summary judgment. Any issue not presented in the nonmovant's response cannot be raised later on appeal. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). We therefore overrule Hudspeth' fifth issue.

### CONCLUSION

ICS showed as a matter of law that it was entitled to recover the deficiency on the note against Hudspeth. Summary judgment in ICS's favor was therefore proper. We affirm the judgment of the trial court.

DUNCAN, J., concurs in the judgment only.

---

1. A statutory version of this protection is codified   at 12 U.S.C. 1823(e).