ACCEPTED
04-15-00255-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/26/2015 5:42:50 PM
KEITH HOTTLE
CLERK

# No. 04-15-00255-CV

## In the Fourth Court of Appeals

## San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/26/2015 5:42:50 PM
KEITH E. HOTTLE
Clerk

**SW Loan A, L.P.**,

*Appellant*,

v.

**Anibal J. Duarte-Viera**, **Antonio P. Pardo**, and
**Edward M. Reiss**,

*Appellees*.

## REPLY BRIEF OF APPELLANT

From the 131st District Court, Bexar County, Texas, No. 2012-CI-12742
The Honorable John D. Gabriel Presiding

**Counsel for Appellant:**

John T. Gerhart, Jr.
jgerhart@hunton.com
State Bar No. 00784122

Bryan C. Bond
bbond@hunton.com
State Bar No. 24082701

Hunton & Williams LLP
1445 Ross Ave., Ste. 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

INDEX OF AUTHORITIES............................................................ ii

EXPLANATION OF REFERENCES ................................................. iv

SUMMARY OF THE ARGUMENT ................................................ 2

ARGUMENT ......................................................................... 5

A.    The standards of review do not require conclusive proof of the amount of SW Loan's damages. ................................................................................................5

B.    SW Loan provided sufficient evidence of the balance due on the Promissory Note on the date of the foreclosure..........................................................................7

    1.    Mr. Redman testified as to the deficiency on the date of the foreclosure. .....7

    2.    The Borrower's bankruptcy statements also provide sufficient evidence of the amount due on the Promissory Note. ........................................................... 14

    3.    The cases cited by the Guarantors in support of their argument that SW Loan failed to prove its damages do not apply. ...................................................... 15

C.    The fact that SW Loan did not offer certain documents into evidence is irrelevant to this appeal........................................................................................ 21

D.    The Guarantors' "cause-the-fault" defense fails to address numerous defaults conclusively proved by the evidence and ignores authorities that foreclose it as a matter of law. ....................................................................................................... 23

E.    The trial court's attorney-fee award cannot stand because the Guarantors' counterclaim had no greater ramifications than the original suit............................. 25

CONCLUSION AND PRAYER .....................................................26

CERTIFICATE OF COMPLIANCE ...............................................29

CERTIFICATE OF SERVICE ......................................................30

# INDEX OF AUTHORITIES

**Cases**

*Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.*, No. 05-97-00425-CV, 2000 WL 1100874 (Tex. App.—Dallas Aug. 8, 2000, pet. denied) (not designated for publication) (opinion on rehearing) ............................................................. 25

*City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699 (Tex. App.—Fort Worth 2008, pet. dism'd) ............................................................................ 24

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001) ........................................... 5

*Favor Ministries, Inc. v. Buttross V, Inc.*, No. 03-13-00562-CV, 2014 WL 7466769 (Tex. App.—Austin Dec. 18, 2014, no pet.) (mem. op.) ............................. 17, 18

*Fletcher v. Day*, No. 04-12-00485-CV, 2013 WL 3963701 (Tex. App.—San Antonio July 31, 2013, no pet.) (mem. op.) ............................................... 19, 20

*Gulf States Utils. Co. v. Low*, 79 S.W.3d 561 (Tex. 2002) ..................................... 20

*Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477 (Tex. App.—San Antonio 1998, no pet.) ..................................................................... 13, 23

*Ingham v. O'Block*, 351 S.W.3d 96 (Tex. App.—San Antonio 2011, pet. denied) .. 5

*O & B Farms, Inc. v. Black*, 300 S.W.3d 418 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ............................................................................... 19, 20

*Valasquez v. Ramirez*, No. 04-13-00319-CV, 2014 WL 5175716 (Tex. App.—San Antonio Oct. 15, 2014, no pet.) (mem. op.) ...................................................... 19

*Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37 (Tex. App.—San Antonio 2006, no pet.) .............................................................................................. 20

*Williams v. Henderson*, 580 S.W.2d 37 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) ................................................................................. 15, 16, 17

*Winslow v. Acker*, 781 S.W.2d 322 (Tex. App.—San Antonio 1989, writ denied) 25

**Statutes**

11 U.S.C. § 362 ............................................................................................. 14

# EXPLANATION OF REFERENCES

*Clerk's Record*:                    CR.[page[1]]

*Reporter's Record*:                 [Volume].RR.[page][:line (if applicable)]

*Brief of the Appellees:*            Resp. at [page]
*Appendix to Brief of*               App. [tab]
*Appellant*:

---

[1] Citations to page numbers are to the page numbers within the .pdf copies of the clerk's and reporter's records on file with the Court.

# No. 04-15-00255-CV

IN THE FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS

**SW LOAN A, L.P.**,

*Appellant*,

v.

**ANIBAL J. DUARTE-VIERA**, **ANTONIO P. PARDO**, and
**EDWARD M. REISS**,

*Appellees*.

## REPLY BRIEF OF APPELLANT

TO THE HONORABLE COURT OF APPEALS:

The Guarantors'[2] arguments in response fail for at least the following reasons: (1) the standards of review do not require conclusive proof of the amount of SW Loan's damages; (2) SW Loan nevertheless provided sufficient evidence of the amount due on the date of foreclosure; (3) the jury was not free to ignore conclusive evidence of the Borrower's defaults; (4) SW Loan did not cause the

---

[2] Unless noted otherwise, capitalized terms in this brief have the same meaning attributed to them in the Brief of Appellant.

Borrower's numerous defaults and, in any event, their "cause-the-default" defense is foreclosed as a matter of law; and (5) the Guarantors' counterclaim did not have any significance beyond SW Loan's underlying lawsuit.

## SUMMARY OF THE ARGUMENT

None of the alleged defects in SW Loan's proof pointed out by the Guarantors explains how the jury could have failed to conclude that the Borrower defaulted on the Promissory Note—a conclusion required by the evidence pointed out in the Brief of Appellant. The standards of review require proof only that the evidence was legally or factually insufficient to support the jury's verdict. As has been demonstrated, the evidence conclusively shows that the jury answered Question No. 2 incorrectly. Likewise, the evidence shows that both the Borrower and the Guarantors were liable to SW Loan. The jury's verdict, therefore, cannot be supported by the evidence.

Further, the Guarantors have misinterpreted the record regarding the evidence of SW Loan's damages. Specifically, the Guarantors have mistakenly asserted that SW Loan provided insufficient evidence of the amount due on the Promissory Note at the time of foreclosure. Although

Mr. Redman's testimony could have been clearer, he did in fact testify as to the amount of the deficiency on the date of the foreclosure. Moreover, the Borrower's sworn bankruptcy statements, in which the Borrower acknowledged owing $10,292,760.61, provide sufficient proof of the amount due on the Promissory Note. The fact that the jury may have been presented with inconsistent evidence as to the specific amount of SW Loan's damages would not allow the jury to conclude that SW Loan suffered *no* damages. Thus, neither the jury's verdict nor the trial court's take-nothing judgment can be supported by SW Loan's alleged failure to prove a specific amount of damages with mathematical precision.

The Guarantors' argument that SW Loan failed to meet its burden because it failed to offer certain documents into evidence also has no merit. As the Brief of Appellant demonstrates, the testimony and documents offered by SW Loan were more than sufficient to prove the Borrower defaulted as a matter of law. The jury was not free to ignore that evidence merely because other evidence could have been offered.

There also is no merit to the Guarantors' argument that SW Loan "caused the default." As explained in the Brief of Appellant, it makes no

difference who ultimately was responsible for paying the Borrower's taxes to Bexar County. The Guarantors have not explained—nor can they explain—how a reasonable juror could have concluded that SW Loan's alleged failure to take advantage of Bexar County's split-payment option caused the Borrower to: (1) fail to make its escrow payments; (2) fail to make its principal and interest payments; (3) fail to fully repay its Loan; and (4) file for bankruptcy. Negating one possible ground for the Borrower's default—the failure to timely pay its property taxes—is not sufficient to negate all of the numerous other defaults conclusively proved by the evidence.

Moreover, the Guarantors have not addressed the fact that a defense to liability based on SW Loan's alleged failure to pay the Borrower's property taxes is an affirmative defense that was not pleaded, was not proved, and on which the Guarantors did not obtain an affirmative finding. Thus, the Borrower's "cause-the-default" defense fails as a matter of law.

Finally, the trial court had no discretion to award attorney fees to the Guarantors. The Guarantors' claim for a declaratory judgment had no

"greater ramifications" on the parties than its application to SW Loan's underlying suit. Indeed, the only relief sought by the Guarantors was a declaration that their liability for SW Loan's underlying claims was limited by their affirmative defenses. Accordingly, the trial court's attorney-fee award must be reversed, and judgment must be rendered in favor of SW Loan on the Guarantors' counterclaim.

## ARGUMENT

### A. The standards of review do not require conclusive proof of the amount of SW Loan's damages.

When a party attacks the legal sufficiency of an adverse finding *on an issue* on which it had the burden of proof at trial, it "must demonstrate on appeal that the evidence establishes, as a matter of law, all *vital facts* in support *of the issue*." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (emphasis added); *Ingham v. O'Block*, 351 S.W.3d 96, 99–100, (Tex. App.—San Antonio 2011, pet. denied). Likewise, where a party attacks the factual sufficiency of an adverse finding *on an issue* on which it had the burden of proof at trial, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242; *Ingham*, 351 S.W.3d at 100.

Although the Guarantors claim that "the standard of review is dispositive,"[3] they offer no authorities explaining why the standard of review would require proof as to the *amount* of SW Loan's damages. The amount of SW Loan's damages is not an *issue* that was reached by the jury. Indeed, the only issues reached by the jury were whether SW Loan held the Guaranty Agreements (to which the jury responded affirmatively)[4] and whether the Borrower failed to comply with the Promissory Note (to which the jury responded negatively).[5] In any event, the specific amount of SW Loan's damages is not a fact that is *vital* to either the jury's verdict or the trial court's take-nothing judgment. The most SW Loan could possibly be required to show is that it was damaged by the Borrower's and the Guarantors' failure to repay the Loan. Indeed, the trial court's take nothing judgment would be conclusively contradicted by a showing of *any* damage to SW Loan.

As pointed out in the Brief of Appellant, SW Loan has conclusively proved: (1) that it acquired the Loan and that it holds the Promissory Note executed by the Borrower, the Guaranty Agreements, and the other Loan Docu-

---

[3] *See* Resp. at 33.

[4] *See* App. B.

[5] *See id.*

ments[6]; (2) that the Borrower defaulted on its obligations under the Promissory Note by failing to make its required escrow payments, by failing to make its required principal and interest payments, by failing to fully repay its Loan, and by filing bankruptcy[7]; (3) that each of the Guarantors signed the Guaranty Agreements in which they guaranteed repayment of the Borrower's indebtedness[8]; and (4) that there is an unpaid deficiency on the Loan following a valid foreclosure sale.[9] Consequently, there can be no question that each of the Guarantors is liable to SW Loan for up to $2,500,000.00 of the deficiency. Thus, there can be no doubt that the evidence is legally and factually insufficient to support the jury's verdict and the take-nothing judgment entered against SW Loan.

**B.    SW Loan provided sufficient evidence of the balance due on the Promissory Note on the date of the foreclosure.**

**1.    Mr. Redman testified as to the deficiency on the date of the foreclosure.**

The Guarantors' have incorrectly asserted that SW Loan failed to offer evidence of the amount due on the Promissory Note at the time of foreclosure. *See*

---

[6] *See* Brief of Appellant at 39–44.

[7] *See id.* at 46–52.

[8] *See id.* at 15–16.

[9] *See id.* at 44–45.

Resp. at 19. To support this assertion, the Guarantors have offered a misinterpretation of Mr. Redman's testimony. Although it is true that Mr. Redman testified that the spreadsheet containing SW Loan's damages calculations showed a deficiency of $3,482,872.63 as of November 17, 2012, he also explained that the number used for the deficiency on that date is based on the amount of the deficiency at the time of foreclosure:

> Q    Please direct your attention on the first page of that exhibit, Mr. Redman, to the number in the column labeled "deficiency." Do you see that?
>
> A    Uh-huh.
>
> Q    What is that number?
>
> A    831,000 --
>
> Q    The deficiency.
>
> A    Oh, the 3482? $3,482,872.63. And that was as of 11/17/2012.
>
> Q    And 11/17 or seven? I don't have it --
>
> A    It's 17.
>
> **Q    So it was calculated, but it was based on the amount of the deficiency at the time of foreclosure; is that correct?**
>
> **A    Yes.**

Q    When was the -- why is the date November 17 if the foreclosure was on November 7th?

A    Well, it's the way the system was set up, and that was most likely the payment date.

Q    That was --

**A    And as you can see, we only calculate 11 days interest and so that would have been 11 days from the date of foreclosure, which was 11/06.**

**Q    Mr. Redman, do you believe that the correct amount of the deficiency on the principal of the loan after the $7 million credited was applied -- after that was applied is the $3,482,872.63?**

**A    Yes, and that includes interest and advances.**[10]

In other words, the $3,482,872.63 deficiency was calculated based on the amount due at the time of the foreclosure on November 6, 2012, after the $7,000,000 that was received from the foreclosure sale had been credited. That amount was then used on November 17, 2012 to calculate eleven days' worth of interest from the date of the foreclosure.[11] Thus, contrary to the Guarantors' as-

---

[10] 2.RR.124:2–125:4 (emphasis added).

[11] Although the exhibit to which Mr. Redman's testimony refers (5.RR.151) makes clear that this interpretation of his testimony is correct, the exhibit was not offered or admitted into evidence.

sertions, Mr. Redman did in fact testify as to the amount of the deficiency on the date of the foreclosure.

The Guarantors' statement that "this number cannot be right – even assuming *arguendo* Redman had used the correct date – because appellant's own pleadings admit Guarantors' liability is capped at $2,500,000. C.R.4–5 (§ D, ¶ 8)"[12] is mistaken. Specifically, the Guarantors misunderstand: (1) the meaning of the term deficiency; (2) the meaning of the Limited Guaranty Agreements; and (3) the meaning of SW Loan's statements in its pleadings.

First, the amount of the deficiency is the difference between the amount due on the Loan and the amount recovered from the foreclosure sale; its calculation is not based on the Guarantors' liability. Put differently, the fact that the Guarantors' liability may be capped has nothing whatsoever to do with calculating the amount of the deficiency on the *Borrower's* Loan. Thus, the Guarantors' ultimate liability has no relevance to the issue of whether Mr. Redman's deficiency calculation was accurate.

---

[12] Resp. at 28.

Second, the Guarantors misunderstand the liability provisions of the Limited Guaranty Agreements. As pointed out in the Brief of Appellant,[13] **each** of the Guarantors signed a Limited Guaranty Agreement in which he

> guarantee[d] to the Lender the absolute, complete and punctual payment and performance when due of all principal indebtedness and other monetary obligations evidenced by or owing under the [Promissory] Note, the [Loan] Agreement, the Loan Documents, and all other documents executed in connection therewith and all renewals, consolidations, modifications, amendments, increases and extensions thereof, together with all interest thereon and all expenses of collection therefor including attorneys' fees and expenses (all of the foregoing items are referred to herein as the "Indebtedness"), **provided that the *Guarantor's* foregoing guarantee of payment and performance obligation owing hereunder is limited to $2,500,000[.]00** of principal plus all interest attributable thereto[.][14]

Consequently, **each Guarantor** is liable for up to $2,500,000.00 of the deficiency, and *together* they are liable for up to $7,500,000. Thus, even if it were somehow relevant to Mr. Redman's calculation of the deficiency, the cap would not matter in this case: $3,482,872.63 is less than half of the $7,500,000 cap on the Guarantors' collective liability.

---

[13] Brief of Appellant at 15.

[14] 5.RR.43, 48, 53 (emphasis added).

Third, because the Guarantors' misunderstand the Limited Guaranty Agreements, they also misunderstand the statements in SW Loan's pleading. The portion of SW Loan's pleading cited by the Guarantors states in relevant part:

> 8. In connection with the extension of credit by Original Lender to Borrower, Original Lender relied, in part, on the creditworthiness of the Guarantors, **each of whom** executed a Limited Guaranty Agreement…. Under the Guaranties, **each Guarantor's** payment and performance obligation is limited to $2,500,000.00 of principal plus all interest attributable thereto.[15]

Thus, despite the Guarantors' assertion, SW Loan's "own pleadings" certainly do not "admit *Guarantors'* liability is capped at $2,500,000."[16]

The Guarantors' argument that Mr. Redman's testimony provided no evidence of the amount due because it was purportedly based on Mr. Redman's "belief" also has no merit. As an initial matter, the Guarantors' never objected to Mr. Redman's damages testimony as being based on "belief." In fact, the Guarantors raised no objections whatsoever to his damages testimony.[17] Regardless, the cases relied on by the Guarantors deal with affidavit testimony where

---

[15] CR.11–12 (emphasis added).

[16] Resp. at 28 (emphasis added).

[17] *See* 2.RR.123:5–127:10.

–12–

the statements were based *solely* on the belief of the affiant. Here, Mr. Redman did not limit his testimony to his "belief" about the amounts owed to SW Loan. On the contrary, he stated unequivocally that the amount of the Borrower's deficiency was $3,482,872.63.[18] He simply responded affirmatively when asked by counsel whether he believed that number was correct.[19] The cases relied on by the Guarantors are therefore inapposite.

The Guarantors' also attack Mr. Redman's damages testimony as conclusory because he did not explain how the amounts were calculated or provide details and documentation to support those calculations.[20] But the law does not require SW Loan to prove its deficiency in that manner. *See Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.) ("A lender need not file detailed proof reflecting the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment.").

---

[18] *See* 2.RR.124:2–125:4.

[19] *See id.*

[20] *See* Resp. at 15, 20.

## 2. The Borrower's bankruptcy statements also provide sufficient evidence of the amount due on the Promissory Note.

Even if one were to ignore Mr. Redman's testimony altogether, the Borrower's bankruptcy statements—signed under the penalty of perjury by one of the Guarantors—establish that the Borrower owed at least $10,292,760.61 at the time of the foreclosure.[21] The automatic stay in bankruptcy prohibited SW Loan from collecting any additional money from the Borrower without prior court approval. *See* 11 U.S.C. § 362. Thus, the amount the Borrower acknowledged owing in bankruptcy could not have materially changed before the stay was lifted[22] to allow SW Loan to foreclose on the Borrower's property. Consequently, the Guarantors cannot dispute that the amount due on the Promissory Note at the foreclosure was at least $10,292,760.61.[23] With $7,000,000 credited from the foreclosure sale,[24] the evidence conclusively shows that a deficiency of at least $3,292,760.61 was owed on the date of the foreclosure.

---

[21] *See* 5.RR.118; *see also* Brief of Appellant at 45.

[22] *See* 5.RR.146–49.

[23] *See* 5.RR.118.

[24] 5.RR.272–75.

**3.     The cases cited by the Guarantors in support of their argument that SW Loan failed to prove its damages do not apply.**

The primary case relied upon by the Guarantors in support of their argument that SW Loan failed to prove its damages is not applicable in this case. *See Williams v. Henderson*, 580 S.W.2d 37, 38–41 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). In *Williams*, the trial court made *specific findings of fact* that the plaintiffs failed to establish: (1) the amount due and owing at the time of the Trustee's Sale; (2) the amount paid for the property at the Trustee's Sale; (3) that the trustee deeded the property to the purchaser; (4) the amount of the deficiency, if any, owed by the defendant to the plaintiffs; and (5) that notice of acceleration was given to the defendant. *Id.* at *38–39. Here, the jury made no such findings.

Moreover, the defendant in *Williams* pleaded payment as an affirmative defense, and neither the plaintiff nor the defendant could testify as to the balance due on the loan. *Id.* at 38–41. The plaintiff's testimony in fact demonstrated that he had no information concerning the payments made by the defendant:

> Q     Mr. Williams, you said you had a bill or a business relationship with the defendant, Dock Henderson, and by that you sold him some property?
>
> A     Yes, sir.

Q      And he owed you some fifteen thousand and some odd dollars?

A      Yes, sir. That is true.

Q      Did he make payments on this?

A      Yes. I don't know exactly how many.

Q      I am just asking if he made a payment or two.

A      **I do not have that information.**

*Id.* (emphasis added). The defendant then testified that he likewise had no information with regard to the amount due on the note:

Q      What was the amount of money due and owing on such account on the 9th day of September, 1974?

A      **I do not have that information.**

*Id.* (emphasis added). The court went on to hold that the evidence supported *the trial court's findings* that the plaintiff had failed to meet his burden of proving the amount due on the loan. *Id.* at 40.

The facts in *Williams* are in stark contrast to those in this case. First, the Guarantors, unlike the defendant in *Williams*, have not pleaded payment as an affirmative defense. That is because the Guarantors do not and cannot dispute that the debt has not been repaid. Indeed, sworn statements from both SW

Loan's representative and the Borrower (through bankruptcy statements signed under the penalty of perjury by one of the Guarantors) demonstrate that at least $10,292,760.61 was due on the loan at the time of the foreclosure. Second, as mentioned in the Brief of Appellant, the Substitute Trustee's Deed was admitted into evidence, providing unrebutted *prima facie* proof of: (1) the Borrower's default on its obligations; (2) a valid Trustee's Sale and foreclosure; and (3) the amount of the proceeds from the Trustee's Sale ($7,000,000).[25] Third, the Guarantors cannot dispute that both they and the Borrower were notified of the acceleration.[26] Thus, the facts in *Williams* are in no way analogous to this case.

The other case cited by the Guarantors is equally inapplicable. *See Favor Ministries, Inc. v. Buttross V, Inc.*, No. 03-13-00562-CV, 2014 WL 7466769 (Tex. App.—Austin Dec. 18, 2014, no pet.) (mem. op.). There, the court noted that "in order for *summary judgment* awarding [the note holder] any deficiency *amount* to have been proper, [the note holder] was required to conclusively prove each of" the elements of its claim, including the amount due on the note at the time of foreclosure. *Id.* at *1 (emphasis added). Summary judgment had been

---

[25] *See* Brief of Appellant at 45, 49–51; 5.RR.273–74.

[26] See 5.RR.93–96 (showing that the Borrower and each of the Guarantors were notified of the acceleration by certified mail).

granted to the note holder based on an affidavit that the appellate court found was incompetent based on the fact that the affiant, at most, merely verified "the facts stated in the summary-judgment motion." *Id.* at *2. Moreover, the affidavit (and thus the only evidence submitted) made no mention of the balance due on the loan at the time of the foreclosure. *Id.* at *1. Because the note holder failed to conclusively establish the elements of his claim, *summary judgment* awarding a specific amount for the deficiency was inappropriate, and the case needed to be remanded for trial to resolve factual issues. *Id.* at *2.

The facts and procedural posture of *Favor Ministries* are readily distinguishable from those here. First, this case does not involve a summary judgment that awarded a specific amount of damages. Obviously, a *summary judgment* awarding a *specific amount* of damages cannot be supported by incompetent evidence that cannot establish the *specific amount* of those damages. But that is not the case here. The trial court's judgment did not award SW Loan damages. And it was not a summary judgment that was granted in SW Loan's favor. Here, SW Loan merely has the burden of establishing that the *jury's verdict* cannot be supported by the evidence. The jury made no findings with respect to the amount of SW Loan's damages. And, in any event, an award of *zero* damages would not be

supported by the evidence—the evidence conclusively shows that SW Loan suffered damages of at least $3,292,760.61 because of the Borrower's and the Guarantors' failure to repay the Loan. If there is a fact issue with respect to the specific amount of SW Loan's damages, that issue must be resolved by the jury at a new trial.

The Guarantors appear to be arguing that because the evidence as to the precise amount of SW Loan's damages may have been inconsistent, the jury was simply free to conclude that SW Loan failed to prove that it suffered *any* damages. That is not the case. "Damages must be established with reasonable certainty, not mathematical precision." *Valasquez v. Ramirez*, No. 04-13-00319-CV, 2014 WL 5175716, at *6 (Tex. App.—San Antonio Oct. 15, 2014, no pet.) (mem. op.); *Fletcher v. Day*, No. 04-12-00485-CV, 2013 WL 3963701, at *4 (Tex. App.—San Antonio July 31, 2013, no pet.) (mem. op.); *O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Thus, "[i]f the fact of damages has been established, then the inability to calculate the exact amount of damages is not fatal." *Fletcher*, 2013 WL 3963701, at *5; *O & B*, 300 S.W.3d at 422. On the contrary, "[i]f the best available evidence affords a reasonable basis for the factfinder to calculate damages, then recovery cannot be

denied because the exact amount of damages cannot be ascertained." *Fletcher*, 2013 WL 3963701, at *5; *O & B*, 300 S.W.3d at 422. The jury therefore "has discretion to award damages *within the range of evidence presented at trial*." *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.).

Here, there can be no disputing that SW Loan was damaged. Sworn statements by both the Borrower and SW Loan's loan servicer, paired with unrebutted *prima facie* evidence of the proceeds from the foreclosure sale, demonstrate a deficiency on the Loan. And although the jury was informed that Mr. Redman had previously submitted inconsistent affidavits as to the amount of the deficiency,[27] none of Mr. Redman's previous affidavits involved a deficiency of *zero*.[28] Thus, a *zero* damages award would not be within the range of the evidence presented to the jury. Accordingly, the Guarantors' arguments centered on SW Loan's alleged failure to prove its damages could not possibly support the jury's verdict or the trial court's take-nothing judgment.

---

[27] *See* 2.RR.125:5–127:13.

[28] The first affidavit claimed a deficiency of $2,454,875.69 and the second claimed a deficiency of $3,584,434.98. *Id.*

## C. The fact that SW Loan did not offer certain documents into evidence is irrelevant to this appeal.

The Guarantors argue that SW Loan's failure to introduce the Notice of Assignment of Note, the Promissory Note, and the spreadsheet containing SW Loan's damages calculations is fatal to its appeal.[29] But that is not true. The standard of review requires only that SW Loan prove that the evidence was insufficient to support the jury's verdict. SW Loan has met that burden. As pointed out in the Brief of Appellant and above, the evidence conclusively shows that the jury's verdict was erroneous. The documents referred to by the Guarantors are not needed to prove the jury's error.

The Guarantors argued that the Notice of Assignment of Note, "if admitted and believed to be true, would have shown the jury that Borrower was allegedly notified by Lender of the assignment to appellant."[30] If it were necessary to prove that the Borrower was notified, Appellee Pardo's testimony would be conclusive on that issue:

> Q      Sir, were you aware that an assignment of the loan and the other loan documents including the limited guaranty agreements had been assigned?

---

[29] Resp. at 15–16.

[30] *Id.*

–21–

A      Yes.[31]

***

Q      I'm handing you, Mr. Pardo, what's been designated as Plaintiff's Exhibit 4 and would you please read the title of that document?

A      Notice of Assignment of Note.

Q      And what assignment is it referring to, sir?

A      It's assigning the Stillwater National Bank loan to SW Loan A, L.P.

Q      And I believe you testified previously a few minutes ago, sir, that you were aware that assignment had occurred.

A      Yes.[32]

Further, as demonstrated in the Brief of Appellant, the evidence conclusively established: (1) the existence of the Promissory Note; (2) that it was signed by the Borrower; (3) that SW Loan was the holder of the Promissory Note; (4) that an amount was due and owing on the Note; and (5) that the Borrower defaulted on the Promissory Note.[33] The Promissory Note itself was not needed to

---

[31] 3.RR.6:10–13; *see also* Brief of Appellant at 17–19.

[32] 3.RR.8:12–22; *see also* Brief of Appellant at 17–19.

[33] Brief of Appellant at 39–52.

establish those facts. And, as pointed out in the Brief of Appellant and above, introducing the spreadsheet SW Loan used for its damages calculations was unnecessary. *See Hudspeth*, 985 S.W.2d at 479. The jury was not free to disregard conclusive evidence offered by SW Loan merely because SW Loan could have offered *more* evidence. Thus, SW Loan's failure to introduce certain documents into evidence has no bearing on this appeal.

**D.     The Guarantors' "cause-the-fault" defense fails to address numerous defaults conclusively proved by the evidence and ignores authorities that foreclose it as a matter of law.**

The Guarantors' response fails to address any of the arguments or authorities raised in the Brief of Appellant with respect to their "cause-the-default" defense.[34] The arguments made in the Brief of Appellant need not be rehashed in their entirety. It is sufficient to note that the Guarantors' response offers no explanation as to how SW Loan's alleged failure to take advantage of Bexar County's split-payment option could have caused the Borrower's numerous defaults, including: (1) its failure to make its required escrow payments; (2) its failure to make its principal and interest payments; (3) its failure to fully repay its Loan;

---

[34] See Brief of Appellant at 53–56.

and (4) its filing for bankruptcy.[35] At best, the Guarantors "cause-the-default" argument could negate the Borrower's failure to promptly pay taxes as a ground for default; it could not negate all of the Borrower's other defaults.

The Guarantors also failed to address the authorities cited by SW Loan demonstrating that even if their "cause-the-default" argument were factually tenable (it is not), it is foreclosed by the fact that it is an unpleaded affirmative defense on which the jury made no affirmative finding.[36] *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd); *Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.*, No. 05-97-00425-

---

[35] In their "Statement of Facts," the Guarantors make a curious argument. They contend—without offering any support—that SW Loan cannot use the Borrower's bankruptcy as a ground for default because SW Loan "never put either the Borrower or the Guarantors on notice that it was relying upon any bankruptcy filing (which occurred after the lawsuit was already filed) as a basis for default." Resp. at 13 (emphasis removed). In addition to the fact that the Guarantors offered no support for that argument, the argument makes no sense. Both the Guarantors and the Borrower were given notice in the Loan Agreement that filing bankruptcy would constitute a default. *See* 5.RR.25. Moreover, SW Loan disclosed bankruptcy as a ground for default in its interrogatories. *See* CR.679. The fact that the bankruptcy occurred after SW Loan had already filed suit does not alter the fact that the Borrower's bankruptcy constituted a default under the governing Loan Documents. If the Guarantors' argument were correct, then a note holder who sued for a non-payment related default would forever be barred from asserting non-payment as a default if the borrower subsequently decided to stop paying its loan. In any event, SW Loan urged bankruptcy as a ground for default, without objection, both during the trial and in its Motion to Disregard Jury Findings and for Judgment Notwithstanding the Verdict. *See* 4.RR.23:19–23; CR.738–40. The Guarantors cannot now claim that bankruptcy is not an actionable ground for default.

[36] *See* Brief of Appellant at 54–55.

–24–

CV, 2000 WL 1100874, at *6 (Tex. App.—Dallas Aug. 8, 2000, pet. denied) (not designated for publication) (opinion on rehearing). The jury did not and could not, as a matter of law, find that the Borrower or the Guarantors were excused from performance by any alleged breach by SW Loan.

**E.    The trial court's attorney-fee award cannot stand because the Guarantors' counterclaim had no greater ramifications than the original suit.**

The Guarantors attempt to defend their attorney-fee award by citing *Winslow v. Acker* for the proposition that "when a declaratory judgment counterclaim has greater ramifications than the original suit, the court may allow the counterclaim." 781 S.W.2d 322, 328 (Tex. App.—San Antonio 1989, writ denied). The Guarantors then try to place their counterclaim into the exception noted in *Winslow* by arguing that the

> Guarantors are allowed under the Declaratory Judgment Act to ask the trial court to declare the rights and obligations of the parties in so far as appellant was seeking relief beyond the principal and interest payments that were allegedly requested in the underlying Note. C.R. 590. That is a request for relief separate and apart from the appellant's affirmative claims in the underlying lawsuit.[37]

The Guarantors' request for declaratory relief had no greater ramifications than the extent of their liability for the claims brought by SW Loan—which was

---

[37] Resp. at 37.

unquestionably the subject of the underlying lawsuit. This is made clear by the fact that the Guarantors' request for declaratory relief mirrored their affirmative defenses to SW Loan's underlying claims.[38] There was no legal basis for awarding the Guarantors attorney fees under the UDJA. The trial court's fee award must therefore be reversed and judgment rendered for SW Loan with respect to the Guarantors' counterclaim.

## CONCLUSION AND PRAYER

The Guarantors have not offered any facts or arguments that could alter the inescapable conclusion that the jury got it wrong. Indeed, the evidence offered by SW Loan conclusively proves that the Borrower defaulted on the Promissory Note and that both the Borrower and the Guarantors are liable to SW Loan for the deficiency. At a minimum, any conclusion that the Borrower had not defaulted or that the Borrower and Guarantors were not liable to SW Loan for a deficiency would be against the great weight and preponderance of the evidence. And it would be both clearly wrong and manifestly unjust to uphold that verdict in the face of overwhelming controverting evidence. Because the evidence is le-

---

[38] CR.587–91.

gally and factually insufficient to support the jury's verdict and the take-nothing judgment entered against SW Loan, the trial court's judgment must be reversed.

The trial court also abused its discretion in awarding attorney fees to the Guarantors for their baseless declaratory-judgment counterclaim. The trial court's judgment with respect to both its declaratory ruling and its award of attorney fees must therefore be reversed and rendered in favor of SW Loan.

SW Loan again requests that the Final Judgment of the trial court, signed January 28, 2015, be reversed, that judgment be rendered in favor of SW Loan with respect to the Guarantors' counterclaim for a declaratory judgment and attorney fees, and that this case be remanded for a new trial to determine the extent of the Guarantors' liability to SW Loan. Alternatively, SW Loan requests that the Court reverse all portions of the trial court's judgment that cannot withstand SW Loan's challenges and render its judgment accordingly. SW Loan also requests any other relief to which it may be entitled.

Respectfully submitted,

HUNTON & WILLIAMS LLP

By: */s/ Bryan C. Bond*

JOHN T. GERHART, JR.
jgerhart@hunton.com
State Bar No. 00784122

BRYAN C. BOND
bbond@hunton.com
State Bar No. 24082701

1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

COUNSEL FOR APPELLANT

# CERTIFICATE OF COMPLIANCE

I certify that this document contains 5,510 words, excluding the sections exempted by Texas Rule of Appellate Procedure 9.4. The body font is 14pt, and the footnote font is 12pt.

*/s/ Bryan C. Bond*
Bryan C. Bond

# CERTIFICATE OF SERVICE

A copy of this Reply Brief of Appellant was sent on October 26, 2015 to the following counsel via email:

**Counsel for Appellees**

Brian P. Lauten
blauten@deanslyons.com
Robert A. McNiel
rmcniel@deanslyons.com
State Bar No. 24043814
Kathleen Kilanowski
kkilanowski@deanslyons.com
State Bar No. 24053303

Deans & Lyons, LLP
325 N. Saint Paul Street, Suite 1500
Dallas, Texas 75201-3891

*/s/ Bryan C. Bond*
Bryan C. Bond